**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| SOUTH CHINA COSMETICS (HK) | : |
| LIMITED, COURAGEOUS LIMITED, | : |
| | : |
| Plaintiffs, | : |
| | : |
| - against - | : |
| | : |
| STEINER LEISURE LIMITED, BLISS | : |
| WORLD LLC, | : |
| | : |
| Defendants. | : |

12 CV 5543 (HB)

<u>OPINION & ORDER</u>

-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Defendants Steiner Leisure Limited ("Steiner") and Bliss World LLC ("Bliss World") move the Court to dismiss the Complaint filed by Plaintiffs South China Cosmetics (HK) Limited ("South China") and Courageous Limited ("Courageous") based on the doctrine of *forum non conveniens*.  Defendants also argue that the Complaint should be dismissed against Steiner due to lack of personal jurisdiction.  For the reasons stated below, Defendants' motion is GRANTED.

### Background

Plaintiffs South China and Courageous are both Hong Kong companies with their principal place of business in Hong Kong. Compl. ¶¶ 7, 8. Defendant Steiner, a Bahamas-based company with its principal place of business in Florida, is a global provider of skin and body care products sold under various proprietary brands, including the Elemis brand at issue in this case. *Id.* ¶ 9.  Defendant Bliss World is a Delaware company with its principal place of business in New York and is alleged to be "a spa division" of Steiner. *Id.* ¶ 10.  Elemis, a wholly-owned subsidiary of Steiner, is a company organized under the laws of England and Wales and oversees the manufacturing and distribution of Elemis brand products. Harrington Decl. ¶¶ 5, 7.  The trademarks for Elemis products, in turn, are owned by Cosmetics, a Bahamas-based company. *Id.* ¶ 8.

The Complaint alleges that in 1999, Courageous entered into a "business arrangement" with Steiner to operate the Elemis Day Spa in Hong Kong (the "Spa Joint Venture Arrangement"). Compl. ¶ 39.  Plaintiffs also allege that in or about April 2009, an affiliate of

1

Plaintiffs purchased the right to exclusively distribute Elemis skin and body products and operate the Elemis Day Spa in Hong Kong, and that by June 2011, South China had the exclusive distribution rights for Hong Kong. Compl. ¶¶ 12, 13.  Although the Complaint is silent about the contractual basis for these rights, it appears that South China entered into a distribution agreement with Cosmetics, pursuant to which South China had the right to promote and sell Elemis products in Hong Kong. Harrington Decl. ¶ 3.

South China acknowledges that it signed this agreement on June 21, 2011, but states that "it was disregarded and superseded the very next day" during a meeting in Hong Kong involving Colvin Brown ("Brown"), the Director of South China and Courageous, Sean Harrington ("Harrington"), the Managing Director of Elemis, and Josephine Lai ("Lai") of Bliss World. Brown Decl. ¶ 13; *see also* Harrington Decl. ¶¶ 1, 19.  Under this "superseding" arrangement, South China agreed with Defendants to "temporarily transfer the retail portion . . . of the distributorship business to Defendant Bliss World . . . with financial terms to be agreed upon" in order to develop and expand the Elemis brand into mainland China and other parts of Asia from Hong Kong ("Retail Joint Venture Arrangement"), and South China had the option to assume ownership of the Elemis business by reimbursing Defendants for their related expenditures. Compl. ¶¶ 15-16.

In the period between July and December 2011, Defendants began taking over the management of the retail business with South China's cooperation; Bliss World engaged Tricor Services Limited to transfer the administrative functions, and a Bliss World executive Jeffrey Matthews ("Matthews") moved to Hong Kong to oversee the daily operations. *Id.* ¶¶ 20-21. Plaintiffs allege that Defendants eventually expanded their activities in Hong Kong beyond retail and encroached upon South China's wholesale business under the representation that "Defendants were interested in engaging in good faith negotiations to purchase [South China's] entire wholesale business for consideration to be agreed upon." *Id.* ¶ 22, 24.

However, in mid-February 2012, Defendants discontinued negotiations regarding the "unresolved terms" of the Retail Joint Venture Arrangement and "abruptly announced"  that any transfer of the Hong Kong retail business would be at Defendants', rather than at South China's, option. *Id.* ¶ 30.  In March 2012, Defendants finally demanded that South China "relinquish" all of its accounts to Bliss World for "consideration worth only a fraction of the value of such business" and asked Courageous to discontinue operating as the Elemis Day Spa in Hong Kong;

when South China refused, Defendants simply "took over such business without paying Plaintiff anything for it." *Id.* ¶¶ 31, 32.  The Court has also been informed that Cosmetics terminated the Distribution Agreement on April 7, 2012, because South China had failed to pay amounts due to Cosmetics and was in breach of other contractual terms and that Cosmetics filed a petition before the High Court of Hong Kong on September 11, 2012, for the unpaid debt of £193,674.53. Harrington Decl. ¶¶ 41, 43.  Plaintiffs, however, contend that the termination is "bogus" because the Retail Joint Venture Arrangement, to which Cosmetics is not a party, supersedes the Distribution Agreement. Brown Decl. ¶ 6(f).

## Discussion

Under the common law doctrine of *forum non conveniens*, a district court may exercise its discretion and dismiss a claim "even if the court is a *permissible* venue with proper jurisdiction over the claim." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (emphasis in original).  When considerations of convenience, fairness, and judicial economy so warrant, a district court may also bypass questions of subject matter jurisdiction and personal jurisdiction and dismiss an action on *forum non conveniens* grounds.[1] *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).  Although the Court must take all of the facts alleged in the Complaint as true, the Court may consider affidavits submitted by the parties and make findings of fact. *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 85 (2d Cir. 2007).  In the exercise of its broad discretion, the district court must follow the three-step process articulated by the Second Circuit and examine: (1) the degree of deference to be paid to the plaintiff's choice of forum; (2) adequacy of the alternative forum proposed by the defendant; and (3) balance of the private and public interests. *See Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) (en banc).  Each of these steps is considered below.

## A.  Deference to Plaintiffs' Choice of Forum

The Second Circuit instructs that "a court reviewing a motion to dismiss for *forum non conveniens* should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden demonstrating" otherwise. *Iragorri*, 274 F.3d at 71.  However, "a foreign resident's choice of a U.S. forum should receive less consideration . . . ." *Id.* at 71 (citing

---

[1] Because I decide the motion on *forum non conveniens* considerations, I need not reach whether the Court has personal jurisdiction over Defendant Steiner.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252 (1981)).  Here, Plaintiffs are foreign companies based in Hong Kong, and their claims arise out of their business in Hong Kong.

Plaintiffs are, of course, correct that the Second Circuit has cautioned that such presumption may not always apply to foreign plaintiffs and instructed the district court to still engage in "the comparative analysis of convenience and forum shopping" to determine the degree of appropriate deference. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005).  In turn, the factors that demonstrate "genuine convenience" are "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72.  On the other hand, the factors that suggest "forum shopping" include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." *Id*.

In light of the above factors, I am not persuaded that Plaintiffs' choice of New York is motivated by genuine convenience and therefore accord only a low level of deference.  New York is obviously both inconvenient and expensive for Plaintiffs based in Hong Kong.  Plaintiffs also do not dispute that appropriate legal assistance in available in Hong Kong, and Defendants stipulate to personal jurisdiction over Defendants in Hong Kong, to a 120-day tolling of any statute of limitations that may apply, and the production of any relevant evidence and witnesses in Defendants' possession, custody or control, as well as the ability to satisfy any judgment awarded against them. Boehm Decl. ¶ 8.

But more importantly, even if I take Plaintiffs' allegations that Defendants "engineered" the "wrongful takeover and destruction" of South China's from Bliss World's New York headquarters as true, Compl. ¶ 2, the key witnesses still reside in Hong Kong or London.  This is not surprising since Plaintiffs are Hong Kong companies, and Elemis is an English company. Furthermore, the Retail Joint Venture Arrangement and the Spa Joint Venture Arrangement, the two contracts at the heart of this dispute, were concluded in Hong Kong, and the alleged takeover was executed in Hong Kong.  In the absence of detailed allegations about Steiner and Bliss World's specific involvement in the Complaint, I have also considered Plaintiffs' supporting

declaration, which lists specific witnesses and documents that are available in New York and Miami but not in Hong Kong. Brown Decl. ¶ 6.  The problem is that these witnesses and documents, to the extent they are relevant at all, are tangential to Plaintiffs' claims.

 On the other hand, the three attendees of the June 2011 meeting—Brown representing South China, Harrington representing Elemis, and Lai representing Bliss World[2]—where the parties allegedly entered into the Retail Joint Venture Arrangement, reside in either Hong Kong or in London. Brown Decl. ¶ 13; Harrington Decl. ¶ 18.  Jeffrey Matthews, a former Bliss Executive who executed the transfer agreement, now resides in Hong Kong. Matthews Decl. ¶ 1. As far as I can tell, among the documents submitted by Plaintiffs as exhibits for the Court's consideration, the most relevant are those exchanged between Brown and Harrington, or between Brown and Matthews, *see, e.g.*, Brown Decl. Ex. E, G, I, M, and for what it is worth, those documents too are in Hong Kong.  Lastly, relevant third-party witnesses that were Plaintiffs' former customers, such as Lane Crawford and Joyce Beauty, are all located in Hong Kong.

## B.  Adequacy of Alternative Forum

 Regardless of the degree of deference that the Court affords to Plaintiffs' choice of forum, Defendants must meet the burden of demonstrating the availability of an adequate alternative forum. *Norex*, 416 F.3d at 157. This burden is met by showing that Defendants are amenable to service of process in Hong Kong and that the subject matter of the dispute can be litigated there. *Id.* (citing *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).  As Defendants point out, the courts in this Circuit have previously held that Hong Kong is an adequate forum for contract and tort actions. *See*, *e.g.*, *Yung v. Lee*, 160 F. App'x 37, 41 (2d Cir. 2005); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.*, 949 F. Supp. 1123, 1129 (S.D.N.Y. 1997).  Defendants have also stipulated to personal jurisdiction, as well as to production of witnesses and evidence, as discussed above.  In my view, Defendants easily meet this burden, and Plaintiffs do not dispute the adequacy of the forum at all. *See* Pls.' Opp. 16-17.

## C.  Balance of Private and Public Interest Factors

 The final step is "to balance the private and public interest factors to determine whether they tilt heavily in favor of the alternative forum." *See Lust v. Nederlandse Programma*

---

[2] Although Plaintiffs point out that Lai's business card has Bliss World's New York address, the personal contact information points only to Hong Kong.  The business card lists the offices of Elemis in London and Bliss World in New York. Brown Decl. Ex. D.

*Stichting*, No. 11-2972-CV, 2012 WL 5233617, *2 (2d Cir. Oct. 24, 2012) (internal quotation marks, modifications, and citation omitted).  The private interest factors assess "the convenience of the litigants" and include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  In considering these factors, "the court should focus on the precise issues that are likely to be actually tried . . . ." *Id*. at 74.  These factors overlap significantly with the "genuine convenience" factors discussed above, and my analysis and conclusion that Hong Kong is the forum where one can locate most of the pertinent evidence and witnesses apply equally here.

"Public interest factors include: court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (quoting *Gilbert*, 330 U.S. at 508).  These factors also favor Hong Kong as the forum. Nor do Plaintiffs dispute Defendants' contention that either Hong Kong law or the law of the Bahamas would apply. Defs.' Supp. 22; Pls.' Opp. 19.  Rather, Plaintiffs have asked that the Court consider what they call "scheme cases" because New York "has a strong interest in addressing wrongful conduct committed in this district." Oral Arg. Tr. 24:6-14; Pls.' Opp. 19. The cases they cite are inapposite.

Plaintiffs rely primarily on *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996), which they characterize as "virtually identical" to the matter before me, and where the defendant's motion to dismiss was denied. Oral Arg. Tr. 25:1-2.  In my view, the commonality with *Peregrine* ends with the alternative forum being the same in both cases, nothing more.  This is because the claims in *Peregrine* arose directly out of the foreign plaintiffs' share acquisition and employment agreements with the defendant who resided in New York, even though the underlying business was a joint venture agreement in Myanmar. *Peregrine*, 89 F.3d at 43-44. The defendant's scheme to undermine these two agreements was revealed by accident when the defendant's personal secretary in New York, hired and paid by the plaintiffs' parent company, accidentally faxed a memorandum outlining the plot to the plaintiffs' parent company in Hong Kong. *Id*. at 44.  In contrast, this case is principally about two contracts concluded in Hong Kong

between a Hong Kong company and an English company with respect to Plaintiffs' business in Hong Kong. The Retail Joint Venture Arrangement was executed by Matthews in Hong Kong, albeit with some logistical support from Bliss World's New York office. If there was a scheme, it would have been plotted between London and Hong Kong, and the "instructions" by Steiner and Bliss World executives from New York, far from being central, would have limited relevance as to the nature of the two alleged Arrangements and the circumstances of their breach.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss for *forum non conveniens* is GRANTED and the case is DISMISSED. The Clerk of the Court is instructed close the case and remove it from my docket.

**SO ORDERED**
December 29, 2012
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.

7